### DODGE *vs.* KNOWLES.

*(Supreme Court of the United States.  1885.)*

MARRIED WOMEN—FAMILY SUPPLIES—NOTE SIGNED BY HUSBAND AS TRUSTEE. Neither the liability for provisions supplied at a dwelling-house where a husband and wife and their children are living together nor a promissory note given by the husband, describing himself as trustee for the wife, in payment for such supplies, can be charged in equity upon the wife's separate estate without clear proof that she contracted the debt in her own behalf, or intended to bind her separate estate for its payment.

Appeal from the Supreme Court of the District of Columbia.

This is an appeal by the children and heirs at law of Francis I. Dodge, a married woman, deceased, from a decree ordering her real estate to be sold for the payment of debts alleged to have been due from her to the appellee, upon a bill filed by him, in behalf of himself and other creditors who might come in, against the husband in his own right and as trustee and executor of the wife, and against her children and various persons interested in the real estate. The following facts were undisputed :  By an ante-nuptial settlement, executed on January 22, 1852, Mrs. Dodge (then Frances I. Chapman) conveyed all her real estate to Mr. Dodge, in trust, to hold the same for her sole and separate use and benefit during her life, and so that the same, and the rents and profits thereof, should not be liable for his debts, "or in any way subject to his control or contracts, except so far as is consistent with the provisions of this contract ;" and to permit her, by herself or her attorney appointed by writing under her hand, to collect and receive the rents and profits from time to time accruing, and to dispose of the same as she might see fit, for her own separate use and benefit ; and if she should, by writing under her own hand and seal and attested by two witnesses, direct the leasing or the absolute sale of the real estate or any part thereof, then the trustee should lease or sell and convey the same accordingly, and collect the proceeds of any sale, and invest them in his name as her trustee, in such manner as she might approve and require, "and hold the said investments, when made, for the same uses, trusts, and purposes, and with the like power and authority, and subject to the like limitations, as are hereinbefore declared of and concerning the original trust subject ;" and it was provided that the wife, notwithstanding her coverture, might by will devise and dispose of the estate, or any part thereof, as she might see fit, and the trustee should hold and dispose of the same accordingly ; and further provisions were made for the disposition of the estate in case she should make no will.  On January 25, 1876, the wife died, leaving three children, and a will, by which, by virtue

of the power of appointment reserved to her in the marriage settlement, she devised all her real estate to her husband in trust for the use and benefit of two of her children, and appointed him executor, and made no provision for the payment of debts. The plaintiff was a retail grocer, and at different times from 1870 to 1875 delivered groceries at the dwelling-house where the husband and wife and their children resided together, and received from the husband, in payment therefor, or in renewal of other similar notes, promissory notes, signed by him in this form, "F. Dodge, trustee for Fannie I. Dodge," payable to the plaintiff or order. At the time of the wife's death the plaintiff held four such notes, payable at various periods not more than four months after date, for sums amounting in all to $2,171.61, and interest, and had delivered groceries to the amount of $120.10, for which no note had been given. The personal property left by Mrs. Dodge was exhausted by a distribution made by her executor among her creditors, under a decree of the probate court, by which the plaintiff received a dividend of $117 upon his claim. It was further alleged in the bill, and denied in the answer of the children, that at the time of the giving of the four notes, and for several years before, Mrs. Dodge was indebted to the plaintiff in a large sum of money for groceries furnished to her, on the credit of her sole and separate estate, for the maintenance of herself and her children and her husband, he being insolvent and entirely without property; and that she caused him for her to make and deliver the notes to the plaintiff; "all which said indebtedness said Frances I. Dodge declared was chargeable to her sole and separate estate, upon the faith of which it was incurred, it having been represented to the plaintiff that her intention to fully secure the same by a proper conveyance in trust had been from time to time before her death prevented by her physical condition;" and that at the time of her death there was also due to plaintiff the sum of $120.10 on open account for groceries furnished as aforesaid. The material parts of the testimony introduced by the plaintiff were as follows: The plaintiff testified: "The groceries were furnished to Mrs. Fannie I. Dodge. They were furnished to the credit of Mrs. Dodge. The four notes were received in part renewa of other notes and a running grocery account. Mrs. Dodge is also indebted to me in the sum of $120.10 for groceries furnished upon her faith and credit. These groceries were delivered at her dwelling-house. They were ordered by Mr. Dodge and the servants from time to time. Occasionally Mrs. Dodge was in the store and ordered some. These articles were furnished upon the credit of Mrs. Dodge, because I expected Mrs. Dodge to pay me for them. I did not expect Mr. Dodge to pay for them, because Mrs. Dodge was looked upon as being worth means, and Mr. Dodge not. Mr. Dodge

never offered to pay me this account, or any portion of it, or to give his own note for any portion of it. He has handed me money which has been placed to the credit of the account. He has repeatedly told me that Mrs. Dodge had plenty of property to pay her debts, and would. He promised me security from Mrs. Dodge upon her real estate for this indebtedness. I did not get it, owing to Mrs. Dodge's death. I did not get a promise from anybody else that I should have real estate security. Mrs. Dodge never personally promised to give me real estate security. I did not see her during the latter part of the transaction." The plaintiff put in evidence a letter written to him on January 10, 1876, by Mr. Dodge, saying: "My wife is dangerously ill, and has been ever since I saw you. Of course I can do nothing yet as to the security promised you. As long as Mrs. Dodge lives, it requires her signature; if she dies, I am still trustee for her heirs, and can then execute a deed to you as such trustee." The husband testified that he was a clerk in an insurance office, and further testified: "The notes were signed 'F. Dodge, trustee for Fannie I. Dodge,' because I had no property. I had no property to give a note upon. I was bankrupt. They were to be chargeable to her. They would not have been signed by me as trustee, unless it was for her and upon her responsibility. I never accompanied the delivery of those notes with the declaration that they were intended to bind her real estate—not that I can remember. These notes were given with the knowledge of my wife, under her general authority. The amounts do not represent any indebtedness contracted by me. The articles furnished by Mr. Knowles were to eat. The family consumed them. My wife's family. Her children and servants comprised that family. These articles were purchased by her and on her credit. She made the exclusive arrangements for their purchase through me, as trustee. I was an inmate of the family during this time; my salary furnished the marketing, and I gave everything I had to the family. I could not support the whole family. She furnished medicines, wood and coal. I told Mr. Knowles verbally that Mrs. Dodge was ill with paralysis; that she could not be spoken to on business; that when she got well I would get her to give him real estate security if I could. I afterwards wrote him the letter of January 10, 1876. The promise given by me was in connection with the notes held by Mr. Knowles. By signing a note I could not make it binding on real estate. These notes were not intended by me to be binding upon her real estate any more than suit at law would make them so. I only meant that she had real estate enough to secure any debt she was making." At the hearing upon bill, answers, a general replication and evidence, the supreme court of the District of Columbia at special term entered a decree dismissing the bill. Upon appeal

to the general term that decree was reversed, and it was adjudged that the plaintiff's claim, as stated in the bill, be a lien upon the real estate included in the marriage settlement. 1 Mackey, 66. The children appealed to this court.

*J. Holdesworth Gordon,* for appellants. No appearance in opposition.

Gray, J.—The plaintiff's claims are for groceries supplied to a household in which the husband and wife and their children were living together; and upon promissory notes given by the husband, describing himself as trustee for the wife, in payment for groceries so supplied. The obligation to pay for the supplies of the family is ordinarily the debt of the husband. Promissory notes given by the husband, though describing himself as a trustee for the wife, bind him personally, and do not bind her to estate, unless he is clearly proved to have had authority to give them in her behalf. The terms of the marriage settlement did not authorize the husband to contract any debts on the wife's account. The evidence introduced by the plaintiff consisted of the testimony of himself and of the husband. The plaintiff's testimony was rather to his own motives and reasons for charging the goods to the wife than to any contract by her; and the husband's testimony was more to legal conclusions than to specific facts. While the plaintiff testified in general germs that the goods were furnished to the wife, and upon her faith and credit, and gave, as his reason for furnishing them upon her credit that he expected her to pay for them, and did not expect the husband to do so, because she was looked upon as worth means, and he was not; and stated that the husband promised him security from the wife upon her real estate; yet the only specific facts to which he testified, bearing on the question who was his debtor, were that the groceries were delivered at the dwelling-house; that they were ordered by the husband and the servants, and occasionally by the wife; and that the husband had handed him money which had been placed to the credit of the account. He did not testify to any express contract by the wife, and he admitted that she never promised to give him security on her real estate. The testimony of the husband was hardly more direct. He testified indeed that the goods were purchased by the wife and on her credit, and that she made the exclusive arrangements for their purchase through him as trustee; that the notes were to be chargeable to her, and would not have been signed by him as trustee unless it was for her and upon her responsibility; and that they "were given with her knowledge, under general authority." But he did not define or indicate the nature or extent of the general authority to which he referred; he did not testify that she ever promised to pay for the goods, or expressly authorized him to promise that she would pay for them; and he did

testify that he never, so far as he could remember, accompanied the delivery of the notes with a declaration that they were intended to bind her real estate. Such testimony is wholly insufficient to warrant a court of equity in decreeing that debts, which are *prima facie* the debts of the husband, should be considered as debts of the wife, and made a lien upon her separate estate.

Reversed and remanded.—*The Reporter.*

## PROHIBITION AND LIQUOR SELLING.

The following are the latest decisions of the several States, construing prohibitory liquor-selling statutes therein, in all their diversified phases, and will be of especial interest to the bar and laity of Georgia at the present time. More decisions in our next number.

### ARKANSAS.

No trick, device, subterfuge or pretence can be allowed to evade the operation or dispute the policy of the liquor laws, if liquor be thereby procured where it is unlawful to sell or give it away. (This was a purchase of whisky under pretence of buying turpentine.)—*Arkansas Supreme Court. Looney vs. State, 43 Ark.,* 389.

The provision of the general election law of January 23d, 1875, against giving away or selling intoxicating liquor on election day, does not apply to an election for a school director at an annual school meeting provided for by the common schools act of 1875.—*Arkansas Supreme Court, Stout vs. State, 43 Ark.,* 413.

### INDIANA.

An indictment for selling liquor on Sunday charged that the act occurred "on the 20th of June, 1883, * * * said 20th of June being the first day of the week, commonly called Sunday." The date given was Wednesday. Held, that the indictment was good.—*Indiana Supreme Court. Roy vs. State, 91 Ind.,* 417.

The courts know judicially that beer is a malt liquor prepared by fermentation, and in view of section 5313, Rev. Stat. 1881, proof of a giving of beer, in a prosecution under section 2098, must be held sufficient evidence that intoxicating liquor was given.—*Indiana Supreme Court, Meyers vs. State, 93 Ind.,* 251.—*Criminal Law Magazine.*